Please be seated. We welcome you here to the court today. We have a very interesting docket. We also have our traffic rules, which we urge you to follow. When the yellow light comes on at your podium, you have two minutes left. When the red light signals, we ask you to complete your argument as soon as possible, unless you're answering questions from the We will not be fully acquainted with the records, so we appreciate citations to the record when those are appropriate. We'll call the first case of the morning, number 17, 40836, United States v. Anderton, hearing from Ms. Bacchus-Labelle first. Thank you, Your Honor. And may it please the court, counsel. I'm going to present, as we have in our brief, three critical issues which we think and have submitted to the court impact the validity of these convictions. The first is an issue of national significance. It is presently under consideration also in the Ninth Circuit, and that is the constitutionality of the residual clause of 8 U.S.C. 1324 A.1.A.4. And that is the question whether the language used in the residual clause is insufficiently precise to permit constitutional enforcement. It's our position that the residual clause, by using the languages it does and a very low scienter standard for what is a serious offense in terms of the possible punishment that can be imposed, that it is so vague that it leaves the determination to juries, judges, and prosecutors, and law enforcement agents, and that any one of these bodies, by their own decisions and enforcement decisions, can define that which the law forbids in accordance with... I'm sorry, Your Honor. Well, excuse me. Your brief said that supplemental briefing had been requested in the Ninth Circuit, and I didn't pursue that to see whether they had issued a decision. But my more pertinent question is, I thought you couldn't bring a vagueness challenge when a particular conviction falls clearly within the scope of the statute. Your Honor, that was the position of the dissent in the Johnson case. That rule of law has changed, and in Johnson, that is no longer the case. It was indeed the case, Your Honor, that for a substantial period of time, if you were making a void for vagueness argument other than in a First Amendment context, you had to demonstrate that it applied, that it was unconstitutional as applied to you. It is now permissible since Johnson, and I believe we discussed that at some length in our reply brief, it is now... That has been done away with, so to speak, and that obstacle no longer exists. A void for vagueness challenge may be fully urged other than in the First Amendment context. Although I will say, and we also say this in our briefing, that inducing and encouraging can only impact First Amendment concerns because the nature of the language is such. What happens, and we also supplemented with the very recent decision a few weeks ago of the Supreme Court in Demeya, where the majority of the court found that the residual clause at issue there was deficient and void for vagueness. And I commend to the court, just because it's such a thorough treatment by Judge Gorsuch, of the historical background of the void for vagueness ruling. He emphasizes as well, as does Justice Kagan, who writes for four members of the majority, they both emphasize the separation of powers. And one of the things that Judge Gorsuch says, which is so persuasive, is that if you look at the historical basis, everything's just fine if everyone's pursuing their own constitutional duties. But when you start pursuing the other branch's constitutional duties as well, you create some serious problems. And both the and Justice Gorsuch's concurrence stress the separation of powers aspect of the void for vagueness doctrine. So it is twofold. One, you're leaving a discretion to other authorities, including juries, who may have a predilection that they're then permitted to pursue. And they are permitted to enforce their own prejudices. And prejudice in immigration matters was acknowledged by the court below as something to be concerned about. Well, let me be a little more specific about this case then. You preserved error on the alleged vagueness of the state of mind, reckless disregard. You apparently did not preserve error on interpreting the terms induce or encourage. So we're on a plain error review as to the latter. Is that correct? Yes, Your Honor. Yeah, well, that's too bad. I would have thought induce and encourage in this context was much more susceptible of a challenge than reckless disregard, which is, reckless disregard is common throughout the criminal law. So how can it be vague? It is vague. It's rather like Judge Gorsuch was pointing out in the de Mayo opinion, in his concurring opinion, is when you then modify the statutory scheme with other language that is uncertain, reckless disregard of what? I mean, that becomes inherently vague as well. It simply compounds the vagueness that we're dealing with. And it's very important to remember that this is, in this particular statute, Your Honor, I think the problems that, the are even worse than in the Johnson case and the de Mayo case for this reason. Not only do they not tell you what the conduct text is, Your Honor, they also supply in the indictment here, the conduct, the enforcement folks, the agents and the prosecutors have decided should be against the law. And you have separately within this statutory scheme, this statutory scheme deals with employment separately. So they've filled in the blank with something that is otherwise dealt with. What do you mean it deals with it? What do you mean it deals with employment separately? In our brief, Your Honor, we've cited for the court the section 1324 that address employment. Well, I know, sir, and we'll be more specific about why those sections preclude applying this one to an employment context. I think that it isn't necessary to consider that issue because it leaves to the discretion of the court how to fill in the blanks with the conduct. That alone is sufficient to avoid for vagueness document. But here what they've done is in deciding to make an employment, they have used a subject matter that the Congress has addressed in that very statutory scheme in a different way. And certainly with not severe, anywhere near as severe penalties, Your Honor. But to address the court's question about plain error, and this is a repetition from our brief, and I certainly don't think this is the only reference, but if you go to the Ex Parte Siebold decision, it's an 1880 decision, but I think its premises are still valid today, and that is that a conviction under an unconstitutional law is not merely erroneous but is illegal and void and cannot be a legal cause of punishment. So respectfully, Your Honor, I certainly take the court's point, but I don't think it gets much plainer than that. If I may just briefly say one thing about the general search claim that we have made, I know that generally courts are not greatly enamored of search and seizure questions and sometimes it seems like the issues are very confounding. This case presents an opportunity for the court to, in a very simple, straightforward way, address a general search because it was a general search. Well, let me tell you this. We hear a lot of Medicare fraud cases, and although the parties don't necessarily raise it, it seems almost customary in those fraud cases that when the government is investigating, it goes in with essentially a search warrant like the one that your client faced. The need is great. General searches are becoming increasingly commonplace. Well, that's because the nature of these regulatory offenses has to do with the conduct of a business that has a lot of, you know, tentacles that are violating the law. That's true, but nonetheless, there must be limits imposed on what can be searched for and it is not possible to read the places to be and items to be searched for and seized in this as anything but all the records of the business. I do want to say, because it is an important issue, that we're dealing with a false statement conviction in a visa petition and it is our position that you cannot convict a person preemptively for something he has not done. Actually, even if he's done it before, the court's decision in Shaw on which the government relied and the lower court relied is not an exception because that was one contemporaneous incident fairly and squarely. If you, and it's a false statement case, this is not a scheme to defraud case. It's a false statement case and it has to be proven that it's false when made, Your Honor. Thank you, Your Honor. Thank you. You have time for rebuttal. Thank you. Mr. Gilbert. Thank you, ma'am. Please, the court. Your Honor, the question before the court here is whether or not the government sufficiently identified the parcel of real property that is named in the final version of the preliminary order of forfeiture. In this particular case, the government failed to do so because the government gave the jury eight unique, distinct legal descriptions of the property and left it to the jury to determine which of those legal descriptions was 2949 West Audie Murphy Parkway. The forfeiture statute at issue here the instruments that created the property itself, which would include the legal description. An address would be akin to the name of a defendant who is named in an indictment. The government cannot simply name a John Doe defendant without adducing sufficient evidence to prove that the particular John Doe defendant who sits in the courtroom is the same one that is alleged to have committed the offenses in the indictment. But in this particular case, what the government did with regard to the real property. Property and people are a little different. Well, they are, Your Honor. People move around and change their appearance and properties don't usually move. Oh, that's absolutely correct, Your Honor. Unless it's an earthquake. Yes, ma'am. The distinction here, though, is how do we define what the property actually is? What are the boundaries? The purpose of the forfeiture statute is to convey clear title and marketable title to the government and without having sufficient evidence in the record. But is there really confusion here about what we were talking about, practically speaking? Well, yes, Your Honor, and the confusion can be seen in the testimony of the government's witnesses. Mr. DeBerke testified both that the eight parcels of real property, the legal descriptions were 2949 West Audie Murphy Parkway, and then immediately testified that those same parcels, or descriptions rather, were different property called the tree farm that were located miles away. The government literally told the jury that these same legal descriptions were two separate and distinct pieces of property in two separate and distinct locations. And so what we've got is an issue where the government put on proof that the underlying conduct did occur at some specific locations, but the entire description to conduct any sort of real estate transaction under the law, it isn't. What relief do you want? Assuming the court made an error and the forfeiture proceeding is contaminated, what do you want the district court to do? What do you want us to do? Your Honor, I believe because the defendant here, a reverse and render, Your Honor, on the forfeiture of this property, because the defendant was entitled to a jury determination under Rule 32.2, the court cannot go back and remedy this issue now at the district court level. While forfeiture is a part of a defendant's sentence, in this particular instance the defendant had a right to a jury determination of the issue, and because the jury verdict is what we're asking the court to reverse, then it would have to be a reverse and render and to declare the preliminary order of forfeiture as invalid. All right. Thank you, sir. Mr. Gibson. Can you pick up where he left off and just tell us if you agree with that statement that if we were to conclude that Anderton's argument on forfeiture is correct, that our only remedy is render rather than the possibility of a new trial? Is that correct in your view? Your Honor, may it please the court, in response to that, I believe the position of Anderton on this issue, Mr. Anderton, is that there was a failure of the government to meet its burden of proof related to forfeiture, and therefore there was insufficient evidence. I believe the context would mean that there is not enough evidence to support the verdict and therefore that it must be vacated in response to it. Just very briefly, if I might, in March of 2016, the grand jury for the Eastern District handed up a six-count indictment charging David Anderton with making a false statement on a visa application to bring workers into the country, with conspiring to encourage and induce individuals to reside in the United States while knowing or in reckless disregard of the fact that it was illegal for them to do so, and on four separate substitute counts of the same encouraging-inducing activity. And specifically, the charges of encouraging and inducing, importantly, were alleged to be for the purpose of commercial advantage and private personal gain. Let me ask you a question. Why didn't you charge harboring? Your Honor, in this particular case, the government made the decision to charge encouraging and inducing because I think the decision was made Because it's vaguer? It's more capacious? Your Honor, I think that there would be some evidence to support a harboring charge. For instance, the evidence showing that both legally present workers and visa workers and workers who are not documented were in fact provided housing on the commercial property that belonged to AA landscaping. That would support potentially a harboring type of charge. In this particular case, also the evidence showed that there was significant evidence about the workers being paid in cash. Frankly, I am troubled about using inducing or encouraging to reside as a vehicle for criminalizing the employment of illegal aliens. I asked my clerk to look up how many prosecutions there had been under this provision. She didn't find many, or at least not many are reported. There is an 11th Circuit, United States v. Kanani. But in that case, the court charged both harboring and the induce encouraging and the court deals with it in about two paragraphs. So it wasn't really challenged. But transforming, inducing, encouraging to reside into hiring people that you know or employing people you know are illegal seems to me a linguistic stretch. Your Honor, in response, the government would note, if this was, and I think this is part of Mr. Anderson's argument, is that this is simply employment. All this was, was this company, AA Landscaping, and its owner, who had vast control and complete control and knowledge over its operations, was simply employing people who were undocumented in this country. And if that were all it's worth, I think that would, we would share the concern of the court that's been raised. But in this particular case, the facts went far beyond this. And in fact, they showed that the, Mr. Anderton employed a system where he did encourage individuals who were not documented to reside and he induced them to reside by hiring them, knowing that they were not lawfully present, by paying them. Well, what's the difference beyond prosecutorial discretion between the facts of this case and an employer, let's say a McDonald's, that under some franchisee knowingly hires illegal aliens but pays them total minimum wage, gives them all the company benefits, treats them for all practical purposes as if they're American citizens, just doesn't use the E-Verify. Isn't that inducing and encouraging in a much more, in a much more significant way than what this guy did, which is allegedly exploiting them? What's the difference? Your Honor, I would respectfully disagree. It's a sanctuary McDonald's. In other words, did, I'm sorry, did the court indicate that they would provide housing also? No. But that doesn't matter. Well, Your Honor. Not all of these fellows had housing. Only a few of them had housing. That is correct, Your Honor. One of them had worked for him for 30 years. Your Honor, as to, this would be for the, I think there were four workers who were not documented who did testify at courts, from my recollection. In this particular case, the government would distinguish that by showing that Mr. Anderson had a system of renting housing or providing substandard housing to workers on land that was owned by ANA Landscaping. But you're not answering my question. I'm sorry, Your Honor. With respect to interpreting, inducing, and encouraging, what is the difference between what this fellow did and what my hypothetical sanctuary McDonald's would do? Because they wouldn't have to provide housing if they weren't underpaying and exploiting the workers. But they're the sanctuary McDonald's and they're certainly inducing and encouraging by turning a blind eye to at least the same extent as Anderton. Your Honor, in this case, the government's position is that a sanctuary, such as I think the court has described, is not such as the facts of this case show, that there was a literal sanctuary provided to undocumented workers. But if it is correct that vagueness has to do with the overall extent of the law and the amount of discretion conferred on the prosecutor, would you not have to agree that the sanctuary employer is violating the law, this statute, inducing or encouraging just as much as Anderton, although you may have exploitive features? Your Honor, I believe that he also encouraged and induced these workers by, from the outset, interviewing them in Spanish. He spoke Spanish. He told them, you can stay and I will pay you cash if you have no documents whatsoever. Well, the sanctuary McDonald's says we're the sanctuary McDonald's. I don't mean to say anything that anyone will take in the wrong spirit about McDonald's, but the sanctuary small employers, there's small employers all over the place. I mean, you only need to drive around Houston to infer that there are probably a lot of small employers who are looking askance, not paying attention to E-Verify or the documents and so on. Aren't they inducing and encouraging without the same, you're saying you're prosecuting this because it's extreme, right? I'm sorry, Your Honor. You're saying you are prosecuting this offense because it is an extreme example of, and it's not the most extreme, but it's an extreme example about disregard of the federal law. But anybody, under your theory, who employs an undocumented alien in reckless disregard of the status of their papers is doing the same thing, aren't they? Your Honor, I respectfully disagree. In this particular case, the focus and really the meaning of the words encourage and induce meant preventing actions that facilitate the violation of immigration laws and that the defendant must act in a way to assist an alien. By that means an action. Where is that in the statute? I think it comports with two things. One is the common meaning of the words encourage and induce. That's a narrowing construction as far as I'm concerned. Your Honor, and I respectfully believe that the cases on constitutional vagueness challenge do encourage the courts to limit the scope of these statutes. Are you encouraging us to do that here? Your Honor, respectfully, yes. The government requests and believes that the correct interpretation of encourage and induce is that found in the, for instance, there was a United States v. Heath case. This is the one the government relied on. And the request for jury instructions, I don't recall any specific objections to that. But that definition was taken from the last law dictionary in two issues. And as far as the vagueness issue on the encouraging and inducing phrase, first of all, the government's position is that can be, those are common terms. It can be commonly defined and are easily understood. That's my problem because what you're saying, I mean, I'm looking at the Kanani case and there's no limitation about, in order to evade the U.S. immigration laws or anything like that. In Kanani, the court just provided the elements of 1324A1A4 as they are written. And I agree with you. And that's my whole point. Even though it is plain error, encourage and induce are very capacious words. And, Your Honor, in response to two issues, one is, as I had indicated, the, I believe that the common usage of the terms encouraging and induce can be used. But in this case, the government's position is these terms mean essentially someone who is taking action to assist someone in a violation of the immigration laws. And secondly, apart from the common dictionary usage of these terms that we believe is well understood, the context of these terms is also important. As the Court knows, within Section 1324 Part A, prior to this particular encouraging and inducing subsection, there are three other sections that relate to unlawful conduct. And those all relate to action terms. And those include bringing or... Okay. So let me just see if I can get a clear answer on this. What is the limiting principle between, if I were to walk in and be a brand new assistant U.S. attorney, as to whether I should charge the employment section or the induce and encourage section? What is the senior partner or senior assistant U.S. attorney, what would you tell me if I came in and go, I don't know how to do this. What's the difference? What would be that limiting principle or the delineating principle you would give me? Are you referring to 1324 A, the next statutory section, which is really the employment section? Right. I'm talking about the one that says hiring somebody known. That's a misdemeanor, right? Right. And so it's a very different prosecution. What facts would you tell me I should be looking for to go from the hiring one to the inducing one? I would focus on, in that particular case, which is not here before the court, but I think we would encourage, if the statute or the activity showed simple employment, in other words, that the employer had on their roster or their list of employees numbers of undocumented workers, then that would be the key situation. They didn't provide housing. They didn't pay people in cash for overtime. They didn't have a complicated system of squeezing cash out of the business to pay their workers, and so forth. Those are all factors that move this case from the government's position out of these simple... So it's the cash and the housing? So that would be in this case, but what, you know, if we're writing this opinion in an effort to limit, induce, and encourage, and I understand it's plain error of use, so that may factor in. I'm still having a little trouble knowing, like, what you're saying, I guess, is if all you did is employ the guy, then we're just on the hiring. If you do something more that helps him or her stay here, then you're into the induce and encourage. Yes, Your Honor, and it would have to be a significant, something more than that, not just at words or something like that speech. It would be more activity by the employer... You'd have to have given him a ride to work every day. Your Honor, again, I would have to view that in context, and again, the context of this case is Mr. Anderton clearly knew that he was employing large numbers of persons who were not documented workers, that from the outset, that he was interviewing them frequently in person, telling them, get documents. If you don't have documents, I'll still hire you, providing them with housing, paying them in cash, essentially off the books, saving probably payroll taxes for him, saving them the problem of having to receive checks. I think the concern that's being expressed here is, you don't, I understand prosecutorial discretion is part of the system, but you don't want to just leave it to, well, I kind of feel like this guy's a lot worse than the sanctuary restaurant or whatever that we've been positing. This guy just seems worse. Okay, how would the person know what that delays? What is significant? What is so significant here? Is it the cash? Is it the residents? What is significant? If I'm driving to work every day and it happens to be that Mr. Undocumented X is on my way to work, and I just pick him up, take him to the office, and then he does his job and I drop him back and it's no extra gas for me, no extra trouble at all, but it's certainly helping him get there, is that enough? Your Honor, in this particular case, the charge was encouraging or reducing the undocumented workers to reside in the United States, and so the provision of housing, I think, is a key factor. Okay, so the housing is the key. Housing is one of the key factors. Well, but he only, but how many resided over the course of this period of time? The record is not exactly clear on that. Well, it's a minimal number because he had well over 300 employees and maybe half of them were apparently undocumented, but only 30 or 40 lived in the trailers, right? Your Honor, and I believe from a percentage issue of the overall number of persons employed, it would be a relatively small percentage. But there were definitely some undocumented that were residing. Yes, Your Honor, as well as I believe some of the visa workers also resided in that housing. But I mean, following up on Judge Haynes' perceptive analogy, in this Kanani case, which is from 2007, the statement of fact is very minimal, and it just says that this fellow was a 40 percent owner of some, what looks like some kind of clothing, lower scale clothing stores or quickie marts or something, and he employed a bunch of unauthorized aliens to gain a competitive advantage, and one fellow testified it was his perception that Kanani had met these people in his religious responsibilities as a leader in his religious community, and they came to him. So he was in clear disregard of their visa status, but the only facts that support the conviction according to the 11th Circuit are that he was employing the illegal aliens, and they charged both harboring and inducing encouraging. So, I mean, to me, that is an interesting analogy that you contend exists here. And, Your Honor, I'm not precisely familiar with the facts of that case. I apologize. K-H-A-N-A-N-I, 502, Fed 3rd, 1281. And, Your Honor, in regard to, I think we're still in the question of what is the, is there a constitutional vagueness problem with the encouraging and inducing language? And, again, the government's position is that those terms, just in summary, they are commonly used terms as we use in the dictionary. I believe that there was no objection to that particular part of the court's charge of where they were defined. The court did define the terms encourage and induce within the jury charge, and also in the statutory context, they clearly show that there is an action required by the employer to assist the alien or the unlawfully present person to reside in violation of the immigration laws. What about the forfeiture? Do you want to comment on that? You already said you agree that if Anderton's right, it is a render, but you haven't said whether you agree that he's right. Your Honor, yes, certainly. Certainly, we disagree with what the appellant's position is on that issue. This is an extraordinarily narrow issue, Your Honor. The clear and undisputed facts are the evidence came in. I believe that there was little or no objection to that. The government did attempt to describe by meets and bounds descriptions offering certified copies, I believe, of those records along with testimony in an attempt to tie them to the various addresses. At the end of the day, Mr. Anderton, within his briefing, or I believe in the motion below, said that there was no need to attach a meets and bounds description to the jury verdict form, that the proof of facilitation was adequate. Essentially, the government's position on this is that the appellant is asking the court to rewrite Rule 32.2. In the brief of the appellant at page 59, it states the following, that the government never established a nexus between, and there's a bracket, the unique legal description of this parcel of real property, end bracket, and the offense, when the rule only requires that the government establish the requisite nexus. Now, in this case, there is a misstatement of the burden of proof because the only thing the government is required to prove for the purpose of the forfeiture trial, which is what happened in this case, is that there was a facilitation of the offense that occurred related to this real property. Now, it's uncontested that that evidence was sufficient, and Mr. Anderton admitted as much in the record below, and so really the only question that goes to the jury is, did this piece of property described as 2949 Audie Murphy Parkway facilitate the offense? The answer was that it was. The record is sufficient to support that, including there was a photograph for evidence exhibit 23 of the office. An agent testified that he located the office at that address, 2949 West Audie Murphy Parkway. Mr. Adiche, in the record, identified the photograph as the ANA office. At the record at page 1522, the only question was facilitation. I see that I'm out of time, so unless the Court has any further questions, we would submit the case on the briefs and thank the Court for its attention. Thank you, sir. Ms. Backus-LaBelle. Your Honors, the question was asked, why wasn't harboring charged? I think there's a reason harboring was not charged, and it's because they could not prove concealment, which is a... He was doing it all out in the open, huh? Pretty much. There's a... One of the difficulties of this record and the government's narrative concerning which we did not bear the burden of proof is that there are no times identified for when things occur, and it is a fair reading of this record that this evolved from a small business to a much larger and more successful business, and that originally workers long before the allegations of this conspiracy were paid in cash, were charged then they were paid in both cash and a check. Their regular hours were paid by check, and the overtime was paid in cash. There's no question about that. It was preceded by a DOL audit. It was preceded by a lawsuit by a few of the visa workers, and any contention that the visa workers were placed in some kind of substandard housing, respectfully your honor, is ridiculous. If you look at the defense exhibits in this trial... I don't know that that's relevant. I mean, it's relevant to them, I'm sure, but not to their charge, it would seem. That's right. I was just addressing substandard housing allegations by the government. Okay. Can I ask you on your conclusion, you say the case should be remanded for dismissal and the alternative for a new trial. Please delineate to me if you win on the constitutional challenge. You know, in other words, that's a very broad prayer. Which one is which on the various allegations that you're making? We've talked about the forfeiture. What else? If we prevail on the void for vagueness argument... Obviously that would be a new trial. Obviously that is gone. If we prevail... But that would not preclude them, I don't have statute of limitations figures in this, but it would not preclude the government from pursuing the employment theory that you're espousing here, the hiring. You mean under an appropriate statute? Well, you're the one who has said the right statute to charge this guy with is the hiring. It's a misdemeanor. So that's fine, but it's still a crime. So what I'm saying is, you are not contending that the vacator of the conviction on constitutional grounds void for vagueness would preclude that, putting aside any question... No, we actually sought that relief from the court below. We asked the court, you should reform this judgment because that's all it can be. It's a six-month statute for 10 or more. So we actually asked for that relief. We brought it up again at sentencing. The judge said it isn't ripe yet. And you're running out of time, so I just want to understand what else of your contentions might lead to a new trial versus a random, if you will. Well, I think if we are correct about the general search, there has to be a remand to determine the impact. That's not what this court wants to do. Clearly, evidence from the search with a trial. So that has to occur. I don't think you salvage this felony conviction in the employment context, nor should you because basically the whole point is an ad hoc and subjective basis on which the conduct that has been supplied here. Thank you, Your Honor. All right. Okay, Mr. Gilbert. Thank you, Your Honor. Your Honor, Section 856 N7 says that the purpose of the forfeiture is to create clear and marketable title in the government. The cases that have addressed this issue have said the definition of property for this statute is the legal descriptions or deeds or paperwork that transfers or gives rise to the existence of the property right. The government agrees that they must prove what the actual legal description is because they attempted to do it at trial. You cannot perfect a forfeiture simply by identifying a piece of property by an address. It is simply unworkable because the property cannot be transferred with clear and marketable title or in even a realistic, practical way to the government. And so I want to finish by going back to Judge Haynes' original question, is there really any confusion here? And the confusion, besides the fact that witnesses said that these legal descriptions were for two completely different pieces of property, stems from this. If the government doesn't have to affirmatively prove what the actual legal description is, they simply can bring into court all the legal descriptions of all the property owned by a defendant or in a subdivision or in a city or in a county and say it's in there somewhere. Here's the address. And that's just not sufficient. Thank you, Your Honor.